# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **LORI A. CRAVEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00008-Y-BP** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER

Plaintiff Lori Craven ("Craven") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). (ECF No. 1). After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## I.    STATEMENT OF THE CASE

Craven filed her application for disability benefits on November 14, 2012, alleging a disability onset date of July 27, 2011. (Transcript ("Tr.") 95, 108, 112, 259). The Commissioner initially denied her application for benefits on February 27, 2013 (Tr. 133) and denied them again upon reconsideration on November 19, 2013. (Tr. 139). Craven requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Anne Pate on August 7, 2014. (Tr. 59). Craven appeared before the ALJ in Fort Worth, Texas. (*Id.*). Sandra Fambrough, a non-attorney, represented Craven at the hearing. (*Id.*). Vocational Expert ("VE") Barbara Dunlap

testified at the hearing. (*Id.*). The ALJ issued her decision on October 17, 2014, finding that Craven was not entitled to disability benefits. (Tr. 123). Craven requested review of the ALJ's decision (Tr. 188), and on November 20, 2015, the Appeals Council vacated the ALJ's decision and remanded the case for an ALJ to address or weigh the opinion of Plaintiff's treating physician, take any further action needed to complete the administrative record, and issue a new decision. (Tr. 21, 129). The second hearing was held in Fort Worth, Texas on January 11, 2017 before a different ALJ, William Helsper. (Tr. 45). Sandra Fambrough again represented Craven at the hearing. (*Id.*). VE Todd Harden testified at the hearing. (*Id.*). ALJ Helsper issued his decision on February 21, 2017, finding that Craven was not entitled to disability benefits. (Tr. 32).

In his decision, ALJ Helsper employed the statutory five-step analysis. At step one, he found that Craven had engaged in substantial gainful activity during calendar year 2011, the second quarter of 2012, and the third and fourth quarters of 2014. (Tr. 23, Finding 2). He also found there had been a continuous 12-month period during which Craven had not engaged in substantial gainful activity. (Tr. 24, Finding 3). At step two, the ALJ found that Craven had the severe physical impairments of obesity, a left knee sprain and derangement, status post total knee replacement, and a left shoulder impairment. (Tr. 24, Finding 4). At step three, the ALJ found that Craven's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404(P)(1). (Tr. 26, Finding 5). The ALJ therefore determined that Craven had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except for never reaching overhead with her dominant, upper extremity. (Tr. 26, Finding 6).

At step four, the ALJ found that Craven was able to perform her past relevant work as a substance abuse counselor and that such relevant work did not require the performance of work-

related activities precluded by her RFC. (Tr. 31, Finding 7). The ALJ found that Craven was not under a disability at any time from July 27, 2011, through the date of his decision on February 21, 2017. (Tr. 32, Finding 8).

The Appeals Council denied Craven's request for review on November 8, 2017. (Tr. 1–6). Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.    FACTUAL BACKGROUND

Craven was born on May 17, 1962, and she was forty-nine years old on her alleged disability onset date. (Tr. 96, 259). Craven's education includes completion of a two-year associate's degree program in Human Services with a specialization in substance abuse counseling from Weatherford College. (Tr. 67). Craven has past work as a dialysis technician and substance abuse counselor. (Tr. 79–80).

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to obtain

disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite his physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial

evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.     ANALYSIS

Craven raises three issues on appeal. She claims (1) that the ALJ improperly found her past work as a substance abuse counselor to be past relevant work; (2) that the ALJ improperly rejected the opinion of her treating physician; and (3) that the Appeals Council improperly disregarded medical evidence submitted after the ALJ's decision.

## A.     The ALJ improperly found Craven's work as a substance abuse counselor to be past relevant work.

The ALJ found Craven's past work as a substance abuse counselor to be past relevant work. (Tr. 31–32). In part, the ALJ relied upon the VE's testimony that, in light of Craven's RFC, Craven could only perform her past work as a substance abuse counselor. (Tr. 31, 56–57). Specifically, the ALJ found that Craven (1) worked as a substance abuse counselor in the past 15 years, (2) earned enough while working as a substance abuse counselor for that work to qualify as substantial gainful activity, and (3) with citation to the Dictionary of Occupational Titles ("DOT") Fourth Ed., Appendix C, worked as a substance abuse counselor for a sufficient amount of time to learn the skills of the job. (Tr. 31).

5

Craven claims her work as a substance abuse counselor cannot be past relevant work because (1) past relevant work must be performed prior to the alleged onset date, and because her work as a substance abuse counselor was after the alleged onset date, then it was not "past" work; (2) her work as a substance abuse counselor was for an insufficient amount of time for her to learn the skills of the job; and (3) her work as a substance abuse counselor was an unsuccessful work attempt, not substantial gainful activity. (*See* ECF No. 15 at 5).

### i.     The ALJ applied the relevant lookback period for application of past relevant work.

Craven's first argument cites to no authority, but urges the Court to employ "[a]s a logical prerequisite," that work "must have been performed in the 'past', i.e., performed before the alleged onset date" to be considered past relevant work. (ECF No. 15 at 5).

The Commissioner's regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). On its face, the regulation could be susceptible to varying interpretations because there is no time period within which to apply the regulation. However, the Commissioner issued a policy statement to guide determination of a claimant's capacity to do past relevant work. *See* SSR 82–62, 1982 WL 31386 (1982). The Policy describes how to determine the relevant 15-year period as follows:

1.     When deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level.

2.     In those title II cases in which the claimant's disability insured status was last met prior to adjudication, the work performed for the 15-year period preceding the date the title II disability insured status requirement was last met would generally be considered relevant, since the claimant's capacity for SGA as of that date represents a critical disability issue.

3.      When deciding whether a title II or a title XVI beneficiary *continues* to be disabled, relevant past work is work he or she performed in the 15-year period prior to adjudication of the issue of continuing disability.

SSR 82–62, 1982 WL 31386, at *2 (emphasis in original).

Policy 82-62 states the 15-year period is measured from the time of adjudication, or if the claimant's insured status lapsed prior to adjudication, then the 15-year period is measured from the last time insured status was met. *Id.*; *Program Operations Manual System (POMS) DI 25001.001 Medical and Vocational Quick Reference Guide*, SOCIAL SECURITY (AUG. 2, 2018), *available at* http://policy.ssa.gov/poms.nsf/lnx/0425001001; *Gossett v. Barnhart*, 374 F. Supp. 2d 505, 510 (E.D. Tex. 2005). Therefore, the applicable 15-year period is not measured from the alleged onset date as urged by the petitioner. Remand is not warranted on this issue.

**ii.      The ALJ erred in finding Craven worked long enough as a substance abuse counselor to learn the skills of the job.**

For work to be considered past relevant work, it must have lasted long enough for a claimant to learn the skills of the job. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner's Regulations allow ALJs to use the DOT, among other sources, to determine whether a claimant can perform past relevant work, given the claimant's applicable RFC. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The DOT and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)* contain a comprehensive list of jobs throughout the United States with assessments for each. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 609 (E.D. Tex. 2009). Relevant to the inquiry here is the assessment of SVP, or specific vocational preparation time, which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter,* 245 F.3d 1182, 1186 n.2 (10th Cir. 2001) (quoting U.S. DEP'T OF LABOR, *Selected Characteristics of Occupations Defined in the*

7

*Revised Dictionary of Occupational Titles*, App. B, B–1 (1993)); *Jackson v. Astrue,* No. 4:11–
CV–28–Y, 2011 WL 4943547, at *9 n.8 (N.D. Tex. Aug. 23, 2011), *adopted by,* 2011 WL 4940998
(N.D. Tex. Oct. 17, 2011).

　　VE Harden testified that Craven's past work as a substance abuse counselor is classified
under DOT code 045.107-058, which has an SVP of 8. (Tr. 56). ALJ Helsper found that Craven's
RFC included sedentary work with a restriction that she may never reach overhead with her
dominant hand. (Tr. 26). The VE opined that the overhead restriction would not interfere with her
duties as a substance abuse counselor. (Tr. 56–57). In finding that Craven was capable of
performing past relevant work as a substance abuse counselor, the ALJ found, citing to DOT,
Appendix C, that she worked as a substance abuse counselor for a sufficient period of time to learn
the skills to return to it. (Tr. 31).

　　An SVP rating of 8 corresponds to four years up to including ten years of time as a
substance abuse counselor. DICOT 045.107-058 (G.P.O), 1991 WL 646633. Craven stated that
she worked as a substance abuse counselor from April 14, 2014 through October 13, 2014. (Tr.
370, 387). The Commissioner does not dispute this contention. (*See* ECF No. 16 at 6). Instead, the
Commissioner argues that DOT, Appendix C allows for higher education—Craven's associates
degree—to shorten the required training time to learn a particular job. (*See id.*). The Commissioner
relies on *Sanders* to bolster this argument. *Sanders v. Astrue*, No. 4:12-CV-2913, 2014 WL
6965038 (S.D. Tex. Dec. 8, 2014).

　　In that case, the ALJ found at step five that Sanders' work as a secretary was past relevant
experience that was transferable to other occupations involving clerical skills. *Id.* at *10. Sanders
had only worked as a secretary for seven months. *Id.* Sanders argued that DOT, Appendix C
required her to have worked as a secretary for over one year to acquire the skills necessary to

achieve average performance because its SVP rating was 6. *Id*. But the Court held that when taking into account Sander's one year of college education, her previous work as a car rental clerk, and her eleven years as a reservation agent with Continental Airlines, there was sufficient evidence to support a finding that Sander's work as a secretary at a car dealership was past relevant work. *Id*.

Here, Craven's circumstances are distinguishable because the issue in *Sanders* focused on the transferability of past relevant skills, including secretarial skills, to clerical skills. *Id.* at *11. While a step five determination involves past work experience, a step four analysis focuses on whether the claimant's impairment prevents her from returning to past relevant work. *See Crowley*, 197 F.3d 194 at 197. In step five, past relevant work experience is a factor to consider amongst several other factors such as the claimant's RFC, age, and education. *Id.* at 198. Accordingly, a step four analysis is much narrower while a step five analysis is broader in scope and incorporates several factors.

Although Craven did not cite to any case law in support of her argument, the undersigned finds the facts in *Stinnett* comparable. *Stinnett v. Berryhill*, No. 4:16-CV-00252-Y-BL, 2017 WL 1403660 (N.D. Tex. Mar. 31, 2017), *adopted by,* No. 4:16-CV-0252-Y, 2017 WL 1382936 (N.D. Tex. Apr. 18, 2017). In *Stinnett*, the claimant argued his experience as a warehouse supervisor did not qualify as past relevant work because he performed the job for only three months. *Id.* at *4. The warehouse supervisor position had an SVP rating of 7 requiring two to four years to learn. *Id.* Even though Stinnett had reported in his disability report that he had worked as a warehouse manager for over four years, the court focused on the ALJ's statement that he had relied on the VE's opinion that Stinnett had past relevant work as a warehouse supervisor from December 2002 through February 2003. *Id.*at 4–5. After reviewing the record, the court noted that the VE never made such a finding, but had only set out the exertional demands and skill requirements of a

warehouse supervisor. *Id.* at 5. Finally, the court stated that the record was sufficiently unclear as to how long Stinnett held which positions and for what duration. *Id.* The court concluded that "merely asserting Stinnett's work as a warehouse supervisor qualifies as past relevant work without any explanation is deficient." *Id.*

The inquiry here is whether the ALJ applied the correct legal standard and whether substantial evidence in the record as a whole supports the ALJ's decision. *See Audler*, 501 F.3d at 447. The ALJ made the following findings to determine Craven's work as a substance abuse counselor qualified as past relevant work:

> The vocational expert testified that the claimant has past work as a dialysis technician . . . and a substance abuse counselor (sedentary, skilled (SVP 8) work with a D.O.T. code of 045.107-058). However, the vocational expert testified that given the claimant's residual functional capacity, the claimant could only perform her past work as a substance abuse counselor. In order to be considered past relevant work, a job must have been performed within the past fifteen years, lasted long enough for the individual to learn how to do the job, and been substantial gainful activity (20 CFR 404.5160(a)(1)). In this case, the record reflects the claimant worked as a substance abuse counselor in the past 15 years (Ex. 15E/1; hearing testimony). Further, the claimant's earnings records indicate that she worked at or above substantial gainful activity when she worked in this position (Ex. 5D/11-12). Moreover, the undersigned finds that the claimant worked in this job for a sufficient amount of time to learn the skills to return to it (Dictionary of Occupational Titles Fourth Ed., Appendix C). Because all three requirements have been satisfied, the undersigned therefore considers the claimant's past work as a substance abuse counselor to be past relevant work.

> Assuming the claimant's residual functional capacity is as assessed above, the vocational expert testified that the claimant would be able to perform the requirements of a substance abuse counselor. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of the work as a substance abuse counselor, the undersigned finds that . . . the claimant is able to perform this job as actually and generally performed, per the vocational expert's testimony.

Tr (31–32). ALJ Helsper's reference to VE Harden's testimony is to make clear that Craven had past work as a substance abuse counselor and could continue to perform that work when considering her RFC. (Tr. 31). However, this statement is not supported by the record because the

VE's testimony focused on the overhead restriction and whether it would interfere with Craven's duties as a substance abuse counselor. (Tr. 56–57). The VE did not opine about whether Craven had worked for a sufficient amount of time to adequately learn the skills of a substance abuse counselor nor did he state Craven could return to work as a substance abuse counselor. Therefore, the VE's testimony is not substantial evidence that Craven's past work as a substance abuse counselor is past relevant work. Presumably, the ALJ took into account Craven's associate's degree, but as in *Stinnet*, the ALJ made no such finding in his decision nor was it discussed at the hearing. The ALJ merely asserted that Craven had worked long enough as a substance abuse counselor without any explanation. The Court notes that Craven has the burden of proof at step four. *See Audler*, 501 F.3d at 448. But an ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Williams v. Colvin*, No. 4:14-CV-988-O-BL, 2016 WL 4059235, at *3 (N.D. Tex. July 6, 2016) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (5th Cir. 2001)), *adopted by*, No. 4:14-CV-988-O, 2016 WL 4039187 (N.D. Tex. July 28, 2016). Because the ALJ's determination that Craven could return to past relevant work is not supported by substantial evidence, the conclusion that she is not disabled is, likewise, not supported by substantial evidence. Accordingly, the case should be remanded to the Commissioner for more detailed factual analysis and further consideration on this point.

### iii.    Craven rebutted the presumption that her past work as a substance abuse counselor was substantial gainful activity.

Craven's final argument is that her work as a substance abuse counselor was an unsuccessful work attempt that cannot be considered past relevant work. (ECF 15 No. 7–8). In her reply brief, Craven claims that because her work as a substance abuse counselor was for six months or less, then the ALJ must consider whether the work was an unsuccessful work attempt. (ECF 17

No. at 3). Craven contends that had the ALJ considered her work as a substance abuse counselor as an unsuccessful work attempt, then he would have found that Craven had worked for less than six months and stopped work due to her impairment. (*Id.* at 4). The Commissioner argues in response that a claimant must prove her impairment forced her to stop work; Craven's employer made accommodations to alleviate her symptoms; and Craven failed to prove she was forced to stop work due to her impairment. (ECF No. 16 at 7). The Commissioner also claims that the VE testified that she could perform the work as a substance abuse counselor. (*Id.*).

"Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452; *see also* 20 C.F.R. §§ 404.1572(a), 416.972(a). Work performed for six months or less will be considered an unsuccessful work attempt if the claimant stopped working or reduced work resulting in earnings falling below substantial gainful activity because of her impairment or because of the removal of special conditions that permitted the claimant to work. 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3); SSR 05-02, 2005 WL 6491604, at *2 (February 28, 2005). But if earnings are more than the amount listed in the Commissioner's guidelines, then it is presumptive proof of substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(2)(ii); *see White v. Heckler*, 740 F.2d 390, 394 (5th Cir. 1984). The claimant bears the evidentiary burden to rebut the presumption that the claimant could no longer maintain employment. *See Shutt v. Secretary*, 490 F.2d 43, 47–48 (5th Cir. 1974) (remanding the case because the ALJ failed to consider claimant's testimony detailing the sporadic nature of his employment over a twenty month period indicating an inability to engage in substantial gainful activity).

The ALJ found, in part, that Craven engaged in substantial gainful activity as a substance abuse counselor during the second and third quarters of 2014. The threshold guideline earnings

amount published on the Social Security website for 2014, the year in which Craven worked as a substance abuse counselor, was $1,070 a month. *Substantial Gainful Activity*, SOCIAL SECURITY, https://www.ssa.gov/oact/cola/sga.html (last visited Aug. 28, 2018). The ALJ found that Craven earned $4,869 and $4,133 in the second and third quarters of 2014, respectively. (Tr. 23, 281, 282). Over this six month period, the average monthly earnings is $1,500. Because Craven's earnings are greater than the guideline amount, then her work as a substance abuse counselor is presumptively substantial gainful activity.

To rebut this presumption, Craven argues that her left knee impairment caused her to stop working as a substance abuse counselor. (ECF No. 7). At the first hearing before ALJ Pate on October 7, 2014, Craven testified how her left knee impairment physically interfered with her work as a substance abuse counselor. She testified that during group sessions (1) she was on her feet and walking a lot, causing inflammation and swelling in her left leg; (2) she had difficulty ascending two steep flights of steps; and (3) she sat for long periods of time, causing even more swelling in her leg. (Tr. 67–68). Due to these limitations, her employer made accommodations that included allowing Craven to teach group sessions on the first floor to avoid the stairs and to prop her foot up when seated. (*Id.*).

On January 1, 2015, Craven sent a letter to the Commissioner indicating that she started work as a substance abuse counselor on April 14, 2014, but then stopped work on October 13, 2014. (Tr. 370). In the letter, Craven cited reasons for discontinuing work that were substantially the same as those she testified to in her first hearing. (*See* Tr. 370). In addition, she stated that her physician recommended another knee surgery to remove scar tissue in order for her to regain mobility in her knee, but that she was unable to have the surgery because she could not afford the copayment. (*See id.*).

On January 26, 2015, Craven's non-attorney representative, Fambrough, sent a letter brief to the Commissioner stating that Craven "stopped working on 10/13/14" and that "[w]hile this work does not constitute an unsuccessful work attempt . . . it should count as part of a trial work period . . . ." (Tr. 371).

At the second hearing on January 11, 2017, Craven testified that her left knee impairment interfered with her being a substance abuse counselor because sitting for long periods of time caused inflammation, swelling, and pain. (Tr. 52–53). Craven indicated she would either get up and walk around or deal with the pain. (Tr. 53). She testified that four or five times a day she would elevate and ice her knee to help reduce the swelling, but then she testified that the swelling does not subside even when elevated and that nothing has helped. (Tr. 55–56). She later testified that her treating physician recommended a complete revision of her prior knee replacement surgery due to a post-operative defect. (Tr. 53).

ALJ Helsper cited to VE Harden's testimony to support his finding that Craven could return to her job as a substance abuse counselor. The following is the VE's testimony at the second hearing:

ALJ: Have you reviewed the documents provided to you concerning Ms. Craven?

A: Yes, I have,

ALJ: Are you personally or professionally acquainted with her?

A: No.

ALJ: Would you please define the exertional demands and the skill requirements of a direct patient care technician in a dialysis center and a drug counselor?

A: Yes, the dialysis technician – SVP-6 and light. Substance abuse counselor is SVP-8 and sedentary.

ALJ: Would a restriction of restricting any overhead reaching of the non-dominant upper extremity interfere with the performance of her duties as a drug counselor?

14

A: No.

(Tr. 56–57).

The undersigned finds that Craven has rebutted the presumption that her work as a substance abuse counselor during the second and third quarters of 2014 was substantial gainful activity. While there is no evidence indicating Craven's employer revoked her accommodations, Cravens' letter dated January 26, 2015 shows that she stopped work due to complications with her left knee. In addition, her treating physician, Dr. Donal Rose, indicated that she needed further surgery on her left knee. (Tr. 607). To support his conclusion, ALJ Helsper cited to the above exchange as evidence Craven could perform the work as a substance abuse counselor. However, after reviewing the VE's testimony, it appears that the VE focused on Craven's RFC's overhead restriction and whether the restriction would interfere with the duties of a substance abuse counselor. The VE did not testify that Craven could return to work as a substance abuse counselor. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. Because Craven has rebutted the presumption that her work as a substance abuse counselor was substantial gainful activity and instead was an unsuccessful work attempt, the ALJ's finding is not support by substantial evidence. Accordingly, the case should be remanded to the Commissioner for more detailed factual analysis and further consideration.

**B.    The ALJ properly rejected the more extreme limitations of Craven's treating physician.**

Craven alleges that the ALJ erred by not assigning controlling weight to the opinion of her treating physician, Dr. Donal Rose, while giving greater weight to non-examining physicians without any explanation, citing to 20 C.F.R. § 404.1527(c)(2). (ECF No. 15 at 10).

15

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455 (citing *Leggett*, 67 F.3d at 566); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). However, the ALJ has the sole responsibility for determining the claimant's disability status, and the ALJ may give less weight to a treating physician's opinion if the ALJ shows good cause for doing so. *Greenspan*, 38 F.3d at 237. "The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*

The ALJ gave "little weight" to the opinions of Dr. Donal Rose, whom the ALJ characterized as "a treating source." (Tr. 30). The ALJ noted the following from Dr. Rose's report dated December 27, 2013:

> [T]he claimant could sit for four hours and stand and/or walk for two hours in an eight-hour workday. Dr. Rose also noted that the claimant could use her upper extremities for grasping, pushing, pulling, and to perform fine manipulation and fingering. Further, Dr. Rose, stated that the claimant could lift and carry up to 19 pounds occasionally and four pounds frequently. Dr. Rose also stated that the claimant could frequently reach in all directions, occasionally climb stairs and ramps, but could never bend, squat, crawl, or climb ladders or scaffolds. Moreover, Dr. Rose reported that the claimant could never have exposure to unprotected heights, but that she could occasionally drive automotive equipment and have occasional exposure to moving machinery, dust, fumes, gasses, and outdoor temperatures. Dr. Rose also reported that the claimant's symptoms would interfere with her ability to concentrate and focus less than 20% of an eight-hour day. Additionally, Dr. Rose reported that the claimant would sometimes need to take one to two unscheduled breaks during an eight-hour day. Dr. Rose also reported that the claimant would be absent from work one day per month. Finally, however,

16

>Dr. Rose stated that the claimant would be able to work a full eight-hour work day
>even when experiencing a "bad day."

(Tr. 30) (internal citations omitted). The ALJ did not adopt Dr. Rose's more restrictive limitations that Craven could only sit for four hours a day and stand or walk for only two hours in an eight-hour workday. (*Id.*).

In reaching his RFC determination, ALJ Helsper cited to the following medical evidence: (1) medical notes dated September 15, 2011 in which Dr. Wilkinson described Craven's left knee surgery (Tr. 28; *see* Tr. 523); (2) an examination dated March 8, 2012 by Dr. Hooker who performed a worker's compensation evaluation (Tr. 30; *see* Tr. 395); (3) several examinations between October 29, 2012 and November 30, 2012 by Dr. Brotherton and Mr. Thompson, PA (Tr. 30–31; *see* Tr. 436–42); (4) a patient history and physical report dated December 4, 2012 by Dr. Brotherton assessing Craven's knee, pre and post-arthroscopic surgery (Tr. 28; *see* Tr. 404–09); (5) several examinations by Dr. Rose and Mr. Hayward, PA from April 29, 2012 to September 23, 2013 assessing Craven's left knee, pre and post-total knee arthroplasty (Tr. 28; *see* Tr. 571–80, Tr. 592–98); (6) a consultative examination by Dr. Obeng dated September 12, 2013 (Tr. 28; *see* Tr. 587–89); (7) a physical examination by Dr. Bratton on March 18, 2014; (8) a physical and radiographic examination by Dr. Crofford on July 22, 2014; (9) more examinations by Dr. Rose on July 31, 2014 and December 10, 2014 (Tr. 229; *see* Tr. 606–07); (10) several examinations by Dr. Kramer assessing Craven's left shoulder impairment; (11) a medical source statement by Dr. Rose dated December 12, 2013, summarized above (Tr. 29–30; *see* Tr. 590–91); (12) a physical RFC assessment dated October 23, 2013 by State Agency Medical Consultant ("SAMC") Kavith Reddy, M.D. (Tr. 29; *see* Tr. 96–107); (13) a physical RFC assessment dated February 26, 2013 by SAMC Andrea Fritz, M.D. (Tr. 30; *see* Tr. 84–94); and (14) Craven's testimony and statements. (Tr. 27, 31, *see* Tr. 45–83, 294–301, 324–332).

17

In his RFC determination, ALJ Helsper cited to the opinions of SAMCs Reddy and Fritz. Both SAMCs found, in part, that Craven could perform sedentary work, lift and carry twenty pounds occasionally and ten pounds frequently, and could sit for more than six hours. (Tr. 29–30). Their determination contradicts Dr. Rose's opinion that Craven could lift and carry nineteen pounds occasionally and four pounds frequently and sit for four hours. (Tr. 29–30). An ALJ can "rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Because SAMCs Reddy and Fritz are not treating or examining physicians, then to the extent their opinions contradict Dr. Rose's opinion, they cannot form the sole basis for the ALJ not giving Dr. Rose's RFC opinion controlling weight. Here, the SAMCs' opinions on how much Craven could lift and carry and for how long Craven could sit directly contradict those of Dr. Rose. Thus, those opinions cannot form the sole basis for not giving Dr. Rose's opinion controlling weight.

However, the determination of disability always remains the province of the ALJ who can decrease the weight of a treating physician for good cause. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237. To do so, an ALJ is required to perform a detailed analysis of a treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(c) only in the absence of controverting medical evidence from another treating or examining physician. *Newton*, 209 F.3d at 453. More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96–2p, 1996 WL 374188 at *4–5 (July 2, 1996).

The ALJ rejected Dr. Rose's more restrictive limitations as follows:

> Little weight is given to this opinion even though the standing and/or walking limitations are consistent with the claimant's residual functional capacity at the sedentary exertional level. Specifically, the undersigned notes that the standing and walking limitations are supported by treatment notes, which indicated that the claimant was morbidly obese and that she has underwent [sic] multiple surgeries on her left knee. However, the evidence in the record does not support the other extreme limitations in this opinion, including that the claimant can only sit for four hours as well as the postural and environmental limitations. Finally, despite the many limitations in this opinion, it does not account for the claimant's left shoulder impairment, which limits her ability to reach overhand with her left upper extremity.

(Tr. 30–31) (internal citations omitted).

The Commissioner's Regulations only require that an ALJ "apply" the section 1527(c)(2) factors and give "good reasons" for the weight assigned to the treating source opinion. *See* 20 C.F.R. § 1527(d)(2). "The ALJ need not recite each factor as a litany in every case." *Simpson v. Astrue*, No. 3-10-CV-0518-BD, 2011 WL 1211393, at *5 (N.D. Tex. Mar. 31, 2011). Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996); SSR 96–2p, 1996 WL 374188, at *4.

Here, it is clear that ALJ Helsper considered Dr. Rose's opinion as to Craven's standing and walking limitations, but rejected his more extreme limitations because they were not supported by the record. While the ALJ did not make specific finding as to each factor set out in 20 C.F.R. § 404.1527(c)(2), he cited to the applicable regulations and demonstrated that the relevant factors had been considered. (*See id.* at 26). Further still, and contrary to Craven's assertion that the ALJ

did not explain why Dr. Rose's opinion was rejected as set forth in 20 C.F.R. § 404.1527(c), the Court finds that the ALJ performed such analysis prior to giving little weight to Dr. Rose's opinions. As to factors one and two under which the ALJ evaluates the examining and treatment relationships between Craven and Dr. Rose, the ALJ's decision clearly identified Dr. Rose as a "treating source" and specifically went through the treatment notes of Dr. Rose from May 2013 to December 2014. (Tr. 28–30); s*ee* 20 C.F.R. §§ 404.1527(c)(1) & (2). As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ specifically noted that Dr. Rose's standing and walking limitations were supported by treatment notes, but that record evidence did not support Craven's more "extreme limitations." (*Id.*).

In the ALJ's RFC determination, he cites to examining physician Dr. Crofford who, on July 22, 2014 and with the assistance of x-rays, examined Craven and noted her "reasonably well-positioned knee arthroplasty without radiolucenc[y], mechanical malalignment or significant bone loss." (Tr. 604). This is in contrast to Dr. Rose's notes on July 31, 2014 and December 10, 2014, indicating Craven's "marked crepitus with ROM" and "[m]oderate effusion." (Tr. 606, 607). The ALJ also cited to examining physician Dr. Kramer who noted on September 17, 2015, December 1, 2015, and October 17, 2016, that Craven demonstrated "normal gait and station." (Tr. 615, 618, 636). This is in contrast with Dr. Rose's observation on July 31, 2014 and December 10, 2014, that Craven exhibited an "antalgic gait on the left that shows pain when walking." (Tr. 606, 607). As to factor five, where more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," the ALJ was aware that Dr. Rose was Craven's treating orthopedic specialist as he clearly reviewed Dr. Rose's multiple examinations of Craven, which indicated that Dr. Rose was an orthopedic

specialist. *See* 20 C.F.R. § 404.1527(c)(5). The ALJ properly considered and went through the factors listed in 20 C.F.R. § 404.1527(c).

Further, the Commissioner argues that Dr. Rose's "medical opinion" consisted of a check-the-box questionnaire that typifies the "brief and conclusory" statements that an ALJ may disregard under the good cause exception. (ECF No. 16 at 8–9). The Fifth Circuit has found that when a treating physician's questionnaire is characterized by "its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations," it may not be entitled to considerable weight. *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011); *see also Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) ("We have previously characterized responses to a 'questionnaire format' as 'typi[cal] brief or conclusory testimony' and declined to accord these responses controlling weight[.]") (citing *Foster*, 674 F. App'x at 415). Here, for example, when Dr. Rose was asked to "list your patient's reported symptoms," he wrote only, "[p]atient has left knee pain. There is pain and crepitus with ROM." (Tr. 590). When asked to "describe the signs and physical findings of your most recent examination," Dr. Rose wrote only, "[p]ain and crepitus with ROM." (*Id.*). Even though ALJ Helsper did not specifically state that this was one of his reasons for giving little weight to Dr. Rose's opinions, he cited to substantial evidence contradicting Dr. Rose's otherwise brief and conclusory statements.

Because ALJ Helsper properly considered the treatment records and opinions of Dr. Rose and went through the factors listed in 20 C.F.R. § 404.1527(c) before giving Dr. Rose's medical source statement less than controlling weight, the Court concludes the ALJ did not err in concluding that Dr. Rose's more "extreme limitations" were not supported by the medical record. (Tr. 30–31).

## C.   PLAINTIFF'S REMAINING ISSUE

Because this case is to be remanded to the ALJ, the Court need not address Craven's remaining issue of whether the Appeals Council improperly disregarded medical evidence as she can raise those issues before the ALJ on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

### RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **September 25, 2018,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed September 11, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE